UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEROME W. MOODY,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO. C04-5385KLS

ORDER REVERSING THE COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff, Jerome W. Moody, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-eight years old.[1] Tr. 77. He completed eleven years of formal education in special education courses, graduated from an alternative high school, and took two quarters of course work in autobody and welding at a community college. Tr. 485, 794. He has past work experience as a recycler,

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

dishwasher, lumber puller, and rip saw operator. Tr. 511, 784.

The long procedural history of this case has been succinctly summarized by Administrative Law Judge ("ALJ") Thomas P. Tielens as follows:

> On February 12, 1997, [plaintiff] filed an application for Disability Insurance Benefits alleging he had been disabled since December 29, 1995 [due to pain in his back and legs (Tr. 16)]. His claim was denied in a hearing decision dated November 27, 1998. (Exhibit 6B). [Plaintiff] filed a complaint in the United States District Court for the Western District of Washington after the Appeals Council declined to review the hearing decision. By an Order dated July 27, 2000, the United States District Court remanded the case to the Commissioner of Social Security for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act. (Exhibit 9B). By an Order dated October 14, 2000, the Appeals Council vacated hearing decision dated November 27, 1998, and remanded the case to an administrative law judge for further proceedings. (Exhibit 10B).
>
> While [plaintiff's] appeal was pending on his 1997 application, he protectively filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income payments on April 13, 2000. As the issues were the same, those claims were consolidated with the claimant's application filed on February 12, 1997.
>
> Pursuant to the Orders of the Court and the Appeals Council, a new hearing was held on July 17, 2001, in Vancouver, Washington. [Plaintiff's] claims were again denied in a hearing decision dated August 20, 2001. (Exhibit B-3A). After the Appeals Council declined to review the hearing decision, the claimant again filed a complaint in the United States District Court for the Western District of Washington. Based on stipulation of the parties, a United States Magistrate issued an Order dated July 1, 2002, reversing the hearing decision and remanding the case to the Social Security Administration. In accordance with the Court Order, an Order of Appeals Council was issued on December 7, 2002, directing the Administrative Law Judge to conduct further proceedings with the Order of the Court. The Administrative Law Judge was ordered to update the medical record to the extent possible, obtain current orthopedic and psychiatric consultative examinations, provide the claimant an opportunity to appear at a hearing, and issue a new decision. The Administrative Law Judge was further ordered to consider whether the claimant's work activity during the period January 1996 and May 1996 was an unsuccessful work attempt. (Exhibit B-10B).

Tr. 782-83. On October 29, 2003, a new hearing was held before ALJ Tielens. Tr. 806. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 806-20.

On March 5, 2004, ALJ Tielens issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of degenerative disc disease of the lumbar spine, chronic low back strain, a speech impediment, a learning disorder (by history), chronic dysthymia versus a major depressive disorder, alcohol abuse in partial remission, intermittent cannabis abuse, psychological factors affecting a physical condition; borderline intellectual functioning, and a mixed personality disorder with antisocial and schizoid

REPORT AND RECOMMENDATION
Page - 2

     features;

 (3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

 (4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded him from performing his past relevant work; and

 (5) at step five, plaintiff was capable of performing other work existing in significant numbers in the national economy.

Tr. 792, 803-05. It does not appear from the record that plaintiff filed a request for review of ALJ Tielens' decision with the Appeals Council. That decision, therefore, became the Commissioner's final decision after sixty days. 20 C.F.R. §§ 404.981, 416.1481.

 On July 2, 2004, plaintiff filed a complaint in this court seeking review of ALJ Tielens' decision. (Dkt. #1). Plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

 (a) the ALJ erred in finding plaintiff did not meet 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C);

 (b) the ALJ erred in evaluating the medical evidence in the record regarding plaintiff's mental and physical impairments;

 (c) the ALJ erred in assessing plaintiff's credibility; and

 (d) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

For the reasons set forth below, the undersigned finds the ALJ improperly evaluated the medical evidence in the record regarding plaintiff's mental impairments, and therefore improperly determined plaintiff to be not disabled. However, because it is unclear whether plaintiff is in fact disabled due to those impairments, this matter shall be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

 This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Properly Found Plaintiff Did Not Meet Listing 12.05(C)

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Pt. 404, Subpt. P, App. 1. 20 C.F.R (the "Listings"). § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed impairment, the claimant is deemed disabled. Id. The burden of proof is on the claimant to establish he meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id. Further, an impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1993 WL 31248 *2.

Plaintiff argues the ALJ improperly found he did not meet 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C) ("Listing 12.05(C)"). Listing 12.05(C) reads in relevant part as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

The Commissioner will assess "the degree of functional limitation" the additional impairment imposes to determine if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12,00(A). That is, if it is a "severe" impairment as defined in 20

1  C.F.R. §§ 404.1520(c) and 416.920(c).

2      The ALJ provided the following reasons for why he found plaintiff did not satisfy the requirements

3  of Listing 12.05(C):

> The claimant's attorney has asserted the claimant meets Listing 12.05C based on a full-scale IQ score of 70 obtained after testing administered by David de Vidal, Ph.D., in April 2003 (Exhibit B-23F), in addition to his other impairments including his low back condition and other mental impairments.  However. Listing 12.05(C) requires an individual's adaptive functioning be considered in addition to a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  An individual must demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22.  While the claimant was placed in special education classes through the 11th grade, he graduated from an alternative high school.  The claimant also reported completing two quarters of community college courses in autobody and welding. (Exhibit B-2E).  On intelligence testing performed by Dr. [Mark B.] Whitehill in September 1998, the claimant achieved a full scale IQ score of 80, indicating low average intellectual functioning. (Exhibit B-15F/13).  The claimant lives alone and is currently able to independently perform activities of daily living at a much higher level than would correlate with a full scale IQ score of 70.  He manages his own finances and reported being able to read a newspaper. (Exhibits 12E/8 and B-23F).  While the claimant has been noted to be cognitively slow, he has been able to successfully maintain jobs classified as unskilled and semi-skilled in the past.  He reported to Dr. de Vidal that he held his longest job for a period of seven years.  He also reported receiving the Worker of the Year Award at another job. (Exhibit B-23F/4).  Dr. de Vidal concluded that the claimant's mental impairment generally results in no limitations in his ability to understand, remember, and carry out simple instructions and only slight limitations in work-related functioning with moderate limitations in his ability to interact appropriately with supervisors. (Exhibit B-23F/6-7).

Tr. 794.

    Plaintiff argues that to be found disabled under Listing 12.05(C), all he needs to show is that he has an IQ score of 60 through 70 and a "severe" physical or other mental impairment, which he asserts the record establishes.  Defendant does not disagree plaintiff meets these two criteria.  Instead, she argues he also must demonstrate his impairment "satisfies the diagnostic description" for Listing 12.05 contained in the explanatory material for mental disorders under 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00, which she asserts he has not done. See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)).  The undersigned agrees.

    The Commissioner's regulations specifically state that:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) (emphasis added).  Plaintiff nevertheless insists he is not

1  required to satisfy the diagnostic description in addition to one of the four sets of criteria, relying on the
2  Ninth Circuit's decision in Fanning v. Bowen, 827 F.2d 631 (9th Cir. 1987). In Fanning, the Ninth Circuit
3  found that because the claimant in that case had an IQ of 69, "[t]he determinative issue" was whether he
4  suffered "from a physical or other mental impairment which imposes an additional and significant work-
5  related limitation of function." Id. at 633. Thus, plaintiff argues, under Ninth Circuit precedent, these are
6  the only two criteria that need to be satisfied under Listing 12.05(C).

7  It is quite clear, however, that the Ninth Circuit decided Fanning based on a much older version of
8  Listing 12.05(C) than the current version, and the one the ALJ in this case was required to consider. See Id.
9  (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (1986)). Indeed, recent amendments made to the
10 regulations "clarify that a claimant will meet the listing for mental retardation only '[i]f [the claimant's]
11 impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of
12 criteria." Foster, 279 F.3d at 354 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) *as amended by*
13 65 Fed.Reg. 50746, 50776 (August 21, 2000)) (emphasis added by court of appeals).

14 As noted above, furthermore, the ALJ set forth a detailed summary of the evidence in the record to
15 show plaintiff has not demonstrated "significantly subaverage general intellectual functioning with deficits in
16 adaptive functioning." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. That evidence does indicate
17 plaintiff has been able to function at a much higher level. In addition, the absence of a diagnosis of mental
18 retardation, along with a diagnosis of "borderline" functioning, properly may be considered in determining
19 whether a claimant meets the requirements of Listing 12.05(C). See Maggard v. Apfel, 167 F.3d 376, 380
20 (7th Cir. 1999). An ALJ also may consider whether the claimant is capable of performing simple, repetitive
21 tasks. Id. The ALJ found the existence of these factors and more, and, as such, his findings are supported
22 by the substantial evidence in the record.

23 II.  The ALJ Properly Evaluated the Medical Evidence in the Record Concerning Plaintiff's Physical Impairments

24 The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the
25 medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the
26 record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the
27 ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's
28 conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595,

1  601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in
2  fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical
3  experts "falls within this responsibility." Id. at 603.

4      In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
5  supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a
6  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
7  thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence."
8  Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the
9  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

10      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
11  either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a
12  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
13  legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the
14  ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
15  F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain
16  why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
17  (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

18      In general, more weight is given to a treating physician's opinion than to the opinions of those who
19  do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of
20  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."
21  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
22  Cir. 2001); Magallanes, 881 F.2d at 75. An examining physician's opinion is "entitled to greater weight
23  than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's
24  opinion may constitute substantial evidence if "it is consistent with other independent evidence in the
25  record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

26      A.    Dr. Starr

27      Plaintiff argues the ALJ failed to provide valid reasons for rejecting the opinion of Dr. Harold G.
28  Starr, one of his treating physicians, regarding his ability to work. Dr. Starr opined in early October 1997,
and again in late August 1998, that plaintiff was capable of performing at the sedentary level, with certain

REPORT AND RECOMMENDATION
Page - 7

additional limitations on his ability to work. Tr. 140-41, 273.  With respect to Dr. Starr's opinions, the ALJ found as follows:

> I have considered the October 1997 opinion of treating physician Dr. Starr that the claimant is limited to sedentary work and find it is entitled to little weight (Exhibit 13F/2 and B-16F/45-46).  Dr. Starr further opined on August 31, 1998, that the claimant could only work six of eight hours per day and would miss more than four days of work per month. (Exhibit 11E/2).  Pursuant to SSR 96-2p the opinion of a treating physician is entitled to controlling weight if it is consistent with the substantial evidence in the record.  In this case, Dr. Starr's opinion is not consistent with the opinion of any other physician of record, other than Dr. [Walter] George who also gave a sedentary RFC and admitted this was a conservative estimate given "to increase the chances of modified work being successful." (Exhibit 8F/15).  Drs. [James A.] Hebard and [Robert] Corrigan have limited the claimant to a range of light to medium work.  The opinions of Drs. Hebard and Corrigan were given in the absence of a thorough review of the findings of the physical capacities evaluation performed on August 13, 1996.  Moreover, Dr. Starr has not supported his opinion that the claimant is limited to sedentary work with pertinent objective findings.  The claimant returns to Dr. Starr once per month in order [to] renew his prescription for narcotic pain medication.  Dr. Starr's chart notes of these visits occasionally reveal objective findings of mild muscle spasm in the lower lumbar area and a flattening of the normal lordotic curvature of the spine (Exhibits B-16F and B-20F).  I also note that in April 1999 Dr. Starr encouraged the claimant to "get involved with returning to work" (Exhibit B-16F/19).  I have also considered Dr. Starr's opinion of January 21, 2000, that the claimant experiences chronic pain "which limits work for which he can do because of his pain and also because of his lack of training." (Exhibit 16F/7).  I conclude Dr. Starr's opinion of the claimant's limitations is based primarily on his subjective complaints.  The record as a whole points to a conclusion that the claimant is not fully credible, as discussed above.  Moreover, there is no evidence that Dr. Starr has been trained in vocational matters, his opinion regarding the effects of the claimant's "lack of training" on his ability to work is out of the realm of his expertise as a medical doctor and is entitled to very little weight.

Tr. 801.

The undersigned finds the ALJ's determination to be supported by the substantial evidence in the record.  Plaintiff first argues the ALJ incorrectly stated that Dr. Starr's opinions regarding his ability to perform work at the sedentary level are not consistent with any other physician in the record, noting that Dr. Neal R. Kirkpatrick also opined that he was limited to sedentary work.  See Tr. 941-44.  As discussed below, however, the ALJ did not err in rejecting that opinion as well.

Plaintiff next argues that in stating that the objective medical findings reported by Dr. Starr do not support his opinions regarding plaintiff's ability to work, the ALJ improperly substituted his own opinion for that of Dr. Starr.  It is true that an ALJ may not substitute his own lay opinion for that of a qualified medical professional.  See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983); Gober v. Mathews, 574 F.2d

772, 777 (3rd Cir. 1978).

The ALJ, on the other hand, need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Magallanes, 881 F.2d at 75. This appears to be what the ALJ did here, as he is permitted to do. Dr. Starr's examination reports show at most minimal to mild objective medical findings. Tr. 272, 278-81, 638, 691-93, 696-708, 711-15, 745-47, 851-55. Thus, the ALJ did not err in rejecting Dr. Starr's opinions that plaintiff is limited to less than the full range of sedentary work for this reason.

Plaintiff further argues that because Dr. Starr was his treating physician for a substantial period of time, his opinion is entitled to great weight. While this is true as a general rule, as noted above, the ALJ found Dr. Starr's opinions to be largely inconsistent with other medical opinions in the record and to be unsupported by his own objective medical findings. In addition, because, as discussed below, the ALJ did not err in discounting plaintiff's credibility, the ALJ also did not err in rejecting Dr. Starr's late January 2000 opinion because it was based primarily on plaintiff's subjective complaints. Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). Accordingly, the undersigned finds the ALJ's reasons for rejecting the opinions of Dr. Starr to be valid and supported by the substantial evidence in the record.

B. Dr. Kirkpatrick

In late April 2003, Dr. Kirkpatrick opined that plaintiff was capable of performing sedentary work, with certain other postural and communicative limitations. Tr. 941-44. With respect to that opinion, the ALJ found as follows:

> While examining physician Dr. Kirkpatrick opined in April 2003 that the claimant was limited to less than the full range of sedentary exertion, that opinion is given little weight. Dr. Kirkpatrick reported no medical findings to support his opinion other than right and left leg extension to 170 degrees. He also reported that he completed the assessment form including the claimant's subjective reports of pain although he acknowledged that the claimant's pain complaints "may not be reasonable judging from the physical findings". (Exhibit B-24F).

Tr. 801. Again, the undersigned finds the ALJ's determination to be supported by the substantial evidence in the record.

Plaintiff first argues that Dr. Kirkpatrick did provide objective medical findings. While this is true, as the ALJ noted, those findings revealed little other than essentially normal findings. Tr. 938-39. Indeed, Dr. Kirkpatrick noted that plaintiff "appeared to be quite comfortable" as he talked to him, that he was able to get off the examining table "without apparent pain," and that when plaintiff left the examining room, he was able to "walk down the hall at a normal rate of speed and perfectly normal gait." Id. Thus, while Dr. Kirkpatrick diagnosed plaintiff with chronic low back strain, he found the claim of "considerable pain . . . may not be reasonable judging from the physical findings." Tr. 939-40. Further, although Dr. Kirkpatrick concluded plaintiff had "psychological factors" in that he was "over-focused on his physical symptoms," this apparently was based on the report of another examining physician from January 2001, and not on Dr. Kirkpatrick's own medical findings. In other words, there is no indication that such psychological factors affected, significantly or otherwise, plaintiff's ability to work.

III.   The ALJ Did not Err in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

1    In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

    The ALJ discounted plaintiff's credibility in part due to inconsistencies between his allegations of disabling pain and the medical evidence in the record concerning his physical impairments. Tr. 796-97. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). As discussed above, the ALJ properly evaluated the opinion of Dr. Kirkpatrick, who stated that plaintiff's pain complaints "may not be reasonable judging from the physical findings." Tr. 940. Further, much of the objective medical evidence in the record, including the findings of Dr. Starr, reveals fairly mild to minimal findings. See Tr. 155, 161-62, 165-85, 201-22, 227, 237-42, 272, 278-81, 576-82, 632-33, 641-47, 658-64, 688-714, 721, 730, 740-53, 759-65, 847-55, 867-905, 913-14, 935-40, 948-962.

    The ALJ also did not err in discounting plaintiff's credibility in part because he had not been fully cooperative in pursuing treatment. Tr. 796-97. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). On the other hand, if the claimant provides evidence of a good reason for not taking medication, his symptom testimony cannot be rejected because he failed to do so. Smolen, 80 F.3d at 1284. For example, the ALJ noted that plaintiff had not completed a work-hardening program, that he attended only seventy percent of his physical therapy appointments, that he questioned anyone's right to send him back to work, and that one of his physicians "expressed exasperation" at his "failure to make basic contacts necessary to arrange for admittance into a pain clinic." Tr. 796-97.

    The ALJ further discounted plaintiff's credibility in part because of his activities of daily living. Tr. 798. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a

work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.  Plaintiff asserts his activities were limited, but the findings of the ALJ belie that assertion:

> In general, the record reveals that the claimant has been involved in activities which are not supportive of his reported limitations.  While the claimant has alleged that he experiences back pain which makes it difficult for him to move, medical records dated April 17, 2001, reveal the claimant punched a wall during an argument with his significant other.  He sustained no significant injury related to that incident. (Exhibits B-2E/2 and B-20F/4).  Medical records dated December 2, 2002, reveal the claimant reported attempting to kick his "wife" but kicked a door instead and injured his foot. (Exhibit B-22F/33).  He has been involved in altercations with his landlady and has been arrested for assault although he testified at the most recent hearing that those charges had been dropped.  Recent medical records also reveal the claimant has received treatment after being pushed in his apartment and hurting his ribs, being hit in the back by security personnel at Fred Meyer, and spending 22 days in jail for terroristic threatening. (Exhibit B-26F).
>
> Medical records from treating physician Dr. George reveal the claimant reported he was walking one mile a day in August 1996.  He reported he was living with his sister and was cooking, washing dishes and performing light housework. (Exhibit 4F/22).  In a questionaire completed near the time of his first hearing on September 15, 1998, the claimant reported he could lift 20 pounds occasionally and 10 pounds frequently, which is consistent with the lifting requirements of light work.  He further reported he could walk six blocks, sit 90 minutes at a time, and stand for 20 to 30 minutes at a time. (Exhibit 12E).  Medical records also reveal that the claimant had walked home from the jail following his release after being arrested in connection with a motor vehicle accident in October 2000 which involved alcohol.  This and his stated ability to walk one mile is inconsistent with allegations that he can walk only six blocks at one time.  The ability to walk up to one mile, sit for up to 90 minutes at one time, stand for 20 to 30 minutes at one time, and lift up to 20 pounds are consistent with an ability to perform light work with a sit/stand option.  In December 2002, he also reported that his main form of transportation was walking and public transportation. (Exhibit B-22F/29).

Tr. 798.  The ALJ properly found these activities to be inconsistent with plaintiff's allegation of disability due to back pain.

The ALJ discounted plaintiff's credibility in part because of his inconsistent statements. Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements).  For example, the ALJ found his claim of being able to walk only six blocks at a time to be inconsistent with his prior statement that he could walk up to one mile. Tr. 798.  The ALJ also noted that:

> While the claimant reported in June 2000 that pain, dizziness, fatigue, weakness, and grogginess prevent him from leaving the house or performing household chores, he reported he is able to shop for groceries once per week, and perform household chores including washing dishes, cooking, sweeping and laundry at his own pace. (Exhibit B-6E).

Id.  The ALJ further found plaintiff had "provided inconsistent and incomplete information regarding his

REPORT AND RECOMMENDATION
Page - 12

significant history of drug and alcohol abuse," noting that:

> In September 2000, the claimant told doctors that he did not use any drugs although his alcohol use was described as heavy. (Exhibit B-17F/5). When the claimant was evaluated by psychiatrist Dr. [Richard] Biebuyck shortly after his motor vehicle accident in October 2000, he reported that he drank only socially and did not inform Dr. Biebuyck of his recent accident due to acute alcohol intoxication. (Exhibit B-18F). The claimant reported to Dr. [David] de Vidal that he had not used cocaine in five to six years and engaged in limited drinking which is inconsistent with his testimony at the hearing and with other medical evidence of record as discussed above. (Exhibit B-23F). During a hospitalization for suicidal ideation associated with alcohol intoxication in October 2002, the claimant reported a history of substance abuse including marijuana, intravenous cocaine and methamphetamine with which he stated he discontinued three months prior. However, he reported differing quit dates to other hospital personnel. (Exhibit B-22F/37-45). The claimant testified at the hearing that he routinely drinks a case of beer per week and one-half to a full fifth of whiskey per week, smokes marijuana occasionally, and snorts cocaine once per month. He admitted using intravenous cocaine one time approximately two years ago. He reported using one-half grain of cocaine per month which he considers "recreational" and had not caused a problem in the past. He did not acknowledge use of methamphetamine which he admitted during a hospitalization in 2002. (Exhibit B-22F).

Tr. 798-99.

In addition, the ALJ noted that while plaintiff "has reported that he is not engaging in drug-seeking behavior," the record indicated otherwise:

> [T]he record contains evidence that the claimant discontinued treatment with Dr. Hebard at Kaiser Permanente in early 1997 because he alleged Dr. Hebard abruptly stopped his supply of Vicodin after he had used this medication for one and one-half years. (Exhibit 6F/6). The claimant's new physician, Dr. McNett, reported his reluctance to continue to prescribe narcotic pain medication for the claimant and expressed exasperation at the claimant's failure to make basic contacts necessary to arrange for admittance into a pain clinic. (Exhibits 6F and B-16F). Dr. Starr reported in August 1998 he advised the claimant to start a swim program at the YMCA and that he should be weaned from pain medication. Dr. Starr reported the claimant was "not very receptive to this." (Exhibits B-5F; B-16F/27 and 34). The claimant has threatened doctors when they have not prescribed or refilled such medication. (Exhibit B-22F). Medical records also reflect that although it was reported that his back pain is generally stable, he has been prescribed increasing dosages of Vicodin over time. Dr. [James T.] Crider's records indicate that the claimant's Vicodin use has increased from two pills per day to four per day with no indication of a worsening condition. In July 2003 he was prescribed 150 tablets for one month (five tablets per day). (Exhibits B-22F and B-26F).

Tr. 797. Smolen, 80 F.3d at 1284 (ALJ may consider other testimony that appears less than candid). Thus, the ALJ did not err in discounting plaintiff's credibility for this reason as well.

Lastly, the ALJ discounted plaintiff's credibility in part due to his history of criminal behavior. Tr. 799. It is not entirely clear how having a criminal history alone indicates a lack of credibility on plaintiff's part regarding his pain complaints and other testimony. Nevertheless, the mere fact that one of the ALJ's reasons is not legitimate, does not render the credibility determination invalid, as long as it is supported by

REPORT AND RECOMMENDATION
Page - 13

the substantial evidence, as it is here. Tonapetyan, 242 F.3d at 1148.

IV.     The ALJ Improperly Found Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

If a disability determination "cannot be made on the basis of medical factors alone," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> I find that the claimant retains the residual functional capacity to perform a modified range of light work. He can lift and/or carry up to ten pounds frequently and up to 20 pounds occasionally. HE must have the option to sit or stand at will. He can occasionally bend, stoop, or twist. He is precluded from performing tasks involving repetitive lifting. He is limited to the performance of simple, one- to three-step tasks which require no more than occasional contact with the general public and with co-workers.

Tr. 800. Plaintiff argues the ALJ erred in evaluating the mental functional limitations found by David de Vidal, Ph.D., and Charles Regets, Ph.D., and therefore in failing to include those limitations in his residual functional capacity assessment. For the reasons set below, the undersigned agrees the ALJ did not properly evaluate the reports of Drs. de Vidal and Regets. However, because it is unclear whether the ALJ actually considered those limitations (or if he did, whether he intended to reject them), or whether the substantial evidence in the record supports those limitations, on remand the Commissioner shall determine whether such limitations should be included in plaintiff's residual functional capacity assessment.

In mid-April 2003, Dr. de Vidal completed a medical source statement of plaintiff's ability to do

work-related mental activities, finding plaintiff to be moderately limited in several areas, including in the ability to make judgments on simple work-related decisions and to interact appropriately with supervisors. Tr. 933-34. With respect to Dr. de Vidal's report, the ALJ found in relevant part:

> In assessing limitations related to the claimant's mental impairments, I have given greater weight to the opinion of Dr. de Vidal . . . Dr. de Vidal concluded that while the claimant has moderate limitations in understanding, remembering and carrying out detailed instructions, he retains the ability to understand, remember, and carry out simple instructions. (Exhibit B-23F/6).

Tr. 802. Thus, as can be seen, the ALJ did not discuss the limitations Dr. de Vidal found with respect to plaintiff's ability to make judgments on simple work-related decisions and interact appropriately with supervisors. Not surprisingly then, the ALJ also did not include those limitations in the his assessment of plaintiff's residual functional capacity.

It is not clear from the record, however, whether either limitations should be included in plaintiff's residual functional capacity assessment. For example, the only other medical source in the record to opine on the issue of plaintiff's ability to make simple work-related decisions is Dr. Regets, who found plaintiff to be not significantly limited in that area. Tr. 539. Since Dr. de Vidal and Dr. Regets are both examining psychologists, the ALJ was not necessarily required to accept the opinion of Dr. de Vidal. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where opinion of examining physician is based on independent clinical findings, it is within ALJ's discretion to disregard conflicting opinion contained in other examining physician's diagnosis). Similarly, while Dr. Regets found plaintiff to be moderately limited in his ability to interact appropriately with supervisors, he further stated within the same report that he "could interact with supervisors." Tr. 540-41. In addition, other examining medical sources in the record have found him to be only mildly impaired or not impaired at all in this area. Tr. 675, 758. As such, it seems more appropriate for the Commissioner, rather than the court, to determine these issues on remand.

In late October 2000, Dr. Regets also had found plaintiff to be moderately limited in several other mental functional areas, including in his ability to: sustain an ordinary routine without special supervision; complete a normal workday and workweek; perform at a consistent pace; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Tr. 539-40. The ALJ did not make any specific findings with respect to these limitations, stating only that the opinion of Dr. Regets was consistent both with his assessment of plaintiff's residual functional capacity and with the opinion of

examining pscyhologist Mark B. Whitehill, Ph.D. Tr. 802.

As noted above, the ALJ's assessment of plaintiff's residual functional capacity contained none of these limitations. Defendant argues the ALJ instead relied on the narrative section of Dr. Regets' report, in which Dr. Regets stated plaintiff was capable of the following work-related activity:

> 1. The Claimant is able to understand, follow, and remember at least three step verbally presented material. The claimant would function best in low stress situations where he has time to consider alternatives and think through solutions.
>
> 2. The Claimant is able to persist at simple repetitive tasks within a normal work shift.
>
> 3. The claimant's diminished stress tolerance limits interactivity with the general public. Claimant could interact with supervisors and co-workers.
>
> 4. The claimant's adaptability is decreased although [he] is able to adapt to situations requiring independent functioning, manage money, provide for transportation, and care for independent living needs without assistance.

Tr. 541. However, there is no indication in the ALJ's decision that he in fact relied on this statement, nor does this appear to be the kind of "specific and legitimate inference" upon which the court itself may draw from the ALJ's decision. See Magallanes, 881 F.2d at 755. In any event, as plaintiff points out, there are additional limitations in the narrative statement the ALJ failed to address.

In addition, although Dr. Whitehall found plaintiff to be moderately limited in his ability to respond appropriately to changes in the work setting as well, he found no limitation in plaintiff's ability to perform routine tasks. Tr. 675. Dr. Whitehall also provides no opinion with respect to the other limitations noted above that were found by Dr. Regets, nor does it appear that any other medical source in the record has so limited plaintiff. Thus, Dr. Regets' opinion does not appear to be entirely consistent with either the ALJ's residual functional capacity assessment or Dr. Whitehall's findings. As such, as with the limitations found by Dr. de Vidal, on remand the Commissioner shall further consider whether the limitations found by Dr. Regets should be included in the assessment of plaintiff's residual functional capacity.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

1    An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical
2 posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d
3 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the
4 medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).
5 Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by
6 the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that
7 description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)
8 (because ALJ included all limitations that he found to exist, and those findings were supported by
9 substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

10   Plaintiff argues the limitations found by both Dr. de Vidal and Dr. Regets show that he is unable to
11 sustain even unskilled, sedentary work as defined by 20 C.F.R. §§ 404.1521 and 416.921 and by SSR 96-
12 9p. Sections 404.1521 and 416.921, however, define "basic work activities" with respect to the step two
13 determination of whether a claimant has a "severe" impairment. The purpose of SSR 96-9p, furthermore, is
14 to provide guidelines for evaluating the ability to do less than a full range of sedentary work. See 1996 WL
15 374185. Because, as discussed above, the ALJ properly rejected those medical opinions in the record
16 limiting plaintiff to less than a modified range of light work, SSR 96-9p does not appear to be applicable.
17 Even if it were applicable, however, plaintiff has not shown that the moderate limitations found by Drs. de
18 Vidal and Regets constitute such a "substantial loss of ability" so as to "substantially erode the unskilled
19 sedentary occupational base" that would justify a finding of disability. Id. at *9.

20   Nevertheless, should it be determined on remand that the limitations found by Dr. de Vidal and Dr.
21 Regets should be included in plaintiff's residual functional capacity assessment, the Commissioner also shall
22 determine at step five of the disability evaluation process, the effect such limitations would have on
23 plaintiff's ability to perform those jobs the vocational expert found he could perform (Tr. 817-18), or, if
24 plaintiff is found to no longer be able to perform any those jobs, on his ability to do other work existing in
25 significant numbers in the national economy.

26 V.   Remand for Further Administrative Proceedings
27   The court may remand a case "either for additional evidence and findings or to award benefits."
28 Smolen, 80 F.3d at 1292. Benefits may be awarded where "the record has been fully developed" and

REPORT AND RECOMMENDATION
Page - 17

"further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain as to whether plaintiff is capable of performing other work at step five of the disability evaluation process, this case shall be remanded for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision is reversed, and this matter is remanded to the Commissioner for further administrative proceedings in accordance with this decision.

DATED this 18th day of August, 2005.

Karen L. Strombom
United States Magistrate Judge